NILDA SOTO DE BERNIER, INSPECTORA DE PROTOCOLOS DEL TRIBUNAL SUPREMO DE PUERTO RICO, peticionaria, *v.* GASPAR RIVERA CESTERO, ETC., demandado y recurrido.

*Número:* O-75-509        *Resuelto:* 19 de mayo de 1977

*Govén D. Martínez Suris, Director Inspección de Notarías,* abogado de la peticionaria; *Gaspar Rivera Cestero,* por su propio derecho.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Al inspeccionar la obra del Notario Don Gaspar Rivera Cestero, la Inspectora de Protocolos Nilda Soto de Bernier pretendió hacer constar en el protocolo correspondiente al año 1970 lo siguiente: "que todas las escrituras están correctas excepto que en la escritura #11 de 19 de agosto de 1970, el esposo hace una donación a la esposa contrario al art. 1286

del Código Civil de Puerto Rico, [¹] (31 L.P.R.A. Sec. 3588)."
El Notario se opuso negándole facultad a la inspectora para
consignar tal apreciación.

Habiendo surgido una discrepancia de criterios en cuanto
al ámbito de la función de la inspectora, (²) ésta acudió al
Tribunal Superior de acuerdo con lo preceptuado en el Art. 38
de la Ley Notarial, 4 L.P.R.A. sec. 1038. Prevaleció el nota-
rio determinando el tribunal que: "No tiene la inspectora en
este caso facultad alguna para consignar en el protocolo una
nota como pretendía, a los efectos de que la escritura de dona-
ción que dio origen a la presente divergencia viola una dispo-
sición del Código Civil. Tal nota no versaría sobre la condi-
ción o estado del protocolo sino sobre la validez substantiva de
un instrumento público." A petición de la inspectora accedi-
mos revisar.

---

(¹) El Art. 1286 del Código Civil expresa:

"Será nula toda donación entre los cónyuges durante el matrimonio.

"No se incluyen en esta regla los regalos módicos que los cónyuges se
hagan en ocasiones de regocijo para la familia."

(²) Así dispone en su parte pertinente dicho artículo:

"Los inspectores de protocolos actuarán bajo la dirección del Juez
Presidente y desempeñarán los deberes y obligaciones que éste les asigne,
debiendo pasar visita una vez por lo menos cada año, a todas las notarías,
a cuyo efecto los notarios pondrán a disposición de cualquiera de ellos en su
oficina notarial, para su examen los protocolos y los registros de afidávits,
todos los días laborables de 8:00 a.m. a 12:00 m. y de 1:00 p.m. a 5:00 p.m.
Terminada la inspección de protocolos de un notario, el inspector consignará
en una breve diligencia bajo su firma y a continuación de la última escri-
tura en cada tomo de los protocolos examinados el estado en que los ha en-
contrado, haciendo constar la fecha de la inspección. Una vez terminada
ésta, el inspector rendirá un informe por escrito al Juez Presidente en el
que hará constar el resultado de su examen, el estado de conservación de
los protocolos, si éstos son guardados de acuerdo con la ley, si se cumplen
en el otorgamiento de los documentos que los integran las disposiciones de
este Capítulo y las de cualquier otra ley aplicable, y si en la matriz de los
instrumentos protocolizados aparecen adheridas y canceladas las estampillas
de rentas internas correspondientes a la cuantía de derecho que debe de-
vengar el Estado Libre Asociado de Puerto Rico computados de acuerdo
con el arancel notarial y el correspondiente sello notarial del Colegio de
Abogados de Puerto Rico."

¿Procedía hacer constar en el protocolo del notario que la donación consignada en la escritura Núm. 11 de 19 de agosto de 1970 era contraria a lo preceptuado en el Art. 1286 del Código Civil?

En su parte pertinente dispone la Sec. 38 de la Ley Notarial:

"Si durante el curso del examen surgiera cualquier divergencia de criterio entre el inspector de protocolos y el notario, en relación con la forma y manera de llevar éste sus protocolos y registros de afidávits, o con respecto al cumplimiento de cualquiera de las otras disposiciones de este Capítulo o de cualquiera otra ley de Puerto Rico, incluyendo las de arancel notarial, el inspector deberá hacerlo constar en su informe haciendo una breve exposición de los hechos y de las razones en que se funda la controversia, y dicho informe será remitido a la sala del Tribunal Superior del lugar en que ejerza el notario para que oyendo al inspector y al notario resuelva la controversia, pudiendo su resolución revisarse por el Tribunal Supremo mediante recurso de *certiorari* interpuesto dentro de diez (10) días después de notificado."

■ Consigna la Ley Notarial que la gestión del inspector de protocolos debe concentrarse en el estado en que ha encontrado el protocolo examinado debiendo constar en su informe el estado de conservación de los protocolos, si aparecen adheridos en la matriz de los instrumentos los sellos de rentas internas, y si en el otorgamiento de los documentos se han cumplido los postulados de la Ley Notarial al igual que las disposiciones de cualquier otra ley aplicable. Esta última frase expande el ámbito de la labor de inspección del inspector de protocolos pues éste deberá también velar porque el notario cumpla con otros preceptos de ley. Ahora, estas disposiciones adicionales cuyo cumplimiento debe velar, serán aquellas que se relacionen en forma y solemnidad con la función notarial y no con claros aspectos de derecho sustantivo. Así el inspector consignará, entre otras observaciones, si en la escritura investigada no se ha hecho constar la hora en que se otorgó

un testamento abierto, (Art. 645 Código Civil); si los testigos de este tipo de testamento no son idóneos, (Art. 644); si al otorgar el notario el testamento abierto o cerrado no ha cumplido con las formalidades exigidas por el Código (Arts. 649 y 657); si el notario no ha consignado en la escritura los requisitos enumerados en la Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958, (31 L.P.R.A. sec. 1292); si el notario no ha cumplido con la Ley de Arancel Notarial, (4 L.P.R.A. secs. 851 a 853), etc.

Se hace énfasis en la legislación notarial española que en la inspección a las notarías se corregirán aspectos formales establecidos por el Reglamento Notarial vigente de 2 de junio de 1944. Expresa el Art. 305 de dicho Reglamento que:

"Las Juntas Directivas de los Colegios por medio de uno de sus individuos o de alguno de los colegiados, podrán girar visitas de inspección a las notarías y archivos del mismo Colegio, a fin de corregir los defectos u omisiones subsanables en la manera de escribir y conservar los instrumentos y protocolos y uniformar la práctica, asegurándose del exacto cumplimiento de las obligaciones notariales en todo el territorio e imponiendo la corrección establecida en el artículo 342." (³) Título Cuatro, Capítulo IV, Sección 2ª, Art. 305.

Como expresa Argentino I. Neri, "Una función de estricta subordinación a la ley, como es la relativa a la inspección de los protocolos, debe juzgarse delicada, pues cabe destacar que la misión del inspector no es la de 'limitarse a verificar solamente el aspecto formal del instrumento' matrizado, sino igualmente la de 'tender a comprobar el cumplimiento estricto de todas las obligaciones notariales', en particular modo de 'todas aquellas que se vinculan con el decoro profesional,

---

(³) El Art. 342 del "Reglamento" *supra*, reza así:

"El apercibimiento se hará por escrito y constará en el expediente del notario.

"La multa no podrá exceder de 1.000 pesetas cuando se imponga por las Juntas directivas, ni de 5.000 cuando sea impuesta por el Ministro de Justicia, como superior jerárquico del Notariado, o por la Dirección General."

la eficacia de los servicios notariales y el respeto a los principios de ética profesional a que hace referencia el Reglamento notarial'. Señalando el alto grado de importancia de este cometido moralizador, fiscalizante y reprimente de la inconducta profesional que el Colegio y el inspector deben cumplir *in solidum*, Yorio ha expresado que 'la incorporación de esta delicada misión, por su naturaleza y por la responsabilidad que importa para el Colegio de escribanos, ha tenido por finalidad que su intervención signifique una acción beneficiosa para el prestigio de la institución notarial y constituya una garantía real de la eficiente y correcta actuación de los colegiados en el desempeño y cumplimiento de las obligaciones que imponen las leyes y reglamentaciones para el ejercicio de la fe pública notarial'." *Tratado Teórico y Práctico de Derecho Notarial*, Vol. 4, Ed. 1971, págs. 114–115.

█ Al contraer matrimonio, los otorgantes de la escritura de donación que nos ocupa establecieron un régimen de estricta separación de bienes. El propósito de la escritura de donación era hacer que un apartamiento que iba a adquirir el esposo fuese propiedad de ambos cónyuges. Para lograr este propósito el Dr. Víctor Rivera donó a su esposa la mitad de lo que había invertido en la compra del condominio, $4,983.78 1/2. La determinación de la modicidad de esta donación competía exclusivamente a los tribunales, por ser ésta un área de derecho sustantivo. Refiriéndose a este aspecto del Art. 1334 del Código Civil Español, equivalente al 1286 nuestro, Scaevola expresa:

*"Por consiguiente, siempre habrá que dar por supuesto que la modicidad a que alude el precepto ha de ser un punto de hecho de la exclusiva competencia del Tribunal sentenciador, cuando el caso se presente en forma de contienda judicial;* y en toda ocasión, aun tratándose de fortunas espléndidas, más que a tal entidad módica, debe atenderse a si la liberalidad excede del límite, o sea la décima parte de los bienes presentes que señala el artículo 1.331 para las donaciones de los desposados en las capitulaciones matrimoniales." (Énfasis nuestro.)

(*Código Civil*, Tomo XXI, Ed. 1967, pág. 373). Véase también Espín Cánovas, *Manual de Derecho Civil Español*, Vol. 4, 4ta. ed. 1972, pág. 221; Manresa, *Comentarios al Código Civil Español*, Tomo IX, ed. 1969, pág. 311.

■ Es claro que la Inspectora se excedió en sus facultades al pretender consignar en el protocolo correspondiente al año 1970 del Notario Don Gaspar Rivera Cestero la observación de que la donación establecida en la escritura Núm. 11 del 19 de agosto de 1970 era contraria al Art. 1286 del Código Civil.

Se deberá extender nota de aprobación del protocolo para el año 1970 del Notario Don Gaspar Rivera Cestero.

*Se confirmará la resolución recurrida.*

El Juez Asociado Señor Rigau no intervino.